UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
OCT  4 2012
David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| v. | § | CRIMINAL No. H-10-459-S |
| WILMAR RENE DURAN-GOMEZ aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito" | § | |
| JOSE ALBERTO BOLANOS-GARZA aka "El Pelon," aka "Miguel Salinas" | § | |
| EFRAIN RODRIGUEZ-MENDOZA aka "Chino," aka "Chenton," aka "Chente," aka "Vicente Garduno" | § | |
| JOSE FUENTES PATRICIA HOLGUIN MAURICIO MERCADO | § | |

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### Count One
### [Conspiracy – 8 U.S.C. §1324(a)(1)(A)(v)(I)]

Beginning from in or about January, 2003 until on or about November 29, 2006 within the Southern District of Texas and elsewhere, the defendants,

**WILMAR RENE DURAN-GOMEZ**
aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito"

**JOSE ALBERTO BOLANOS-GARZA aka "El Pelon,"aka "Miguel Salinas"**

**EFRAIN RODRIGUEZ-MENDOZA aka "Chino," aka "Chenton," aka "Chente," aka "Vicente Garduno"**

**JOSE FUENTES**

**PATRICIA HOLGUIN**

**MAURICIO MERCADO**

did knowingly combine, conspire, confederate and agree, with each other and with other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is: to transport and harbor illegal aliens within the United States, in any manner whatsoever, knowing and in reckless disregard of the fact that such aliens had entered the United States illegally; in violation of Title 8, United States Code Sections 1324(a)(1)(A)(ii), 1324(a)(1)(A)(iii), and 1324(a)(1)(B)(i).

## Manner and Means of the Conspiracy

1. Smuggled aliens are brought to areas in Mexico by alien smugglers who intend upon bringing them illegally into the United States.

2. Those smuggled aliens are taken to staging areas south of the United States border.

3. The smuggled aliens are then guided across the border into the United States where they are taken to staging areas north of the United States border.

4. The smuggled aliens are transported to locations south of various check points where they are guided on foot to locations north of the Border Patrol check point.

5. The smuggled aliens are transported to Houston, Texas where they are held until their relatives and/or friends pay the alien smugglers a fee for their release or the alien smugglers make contact with the relatives

2

and/or friends pay the fees necessary for the release of the smuggled aliens.

6.    After the smuggling fees are paid, arrangements are made for the delivery of the smuggled aliens with their friends and/or relatives in various locations throughout the United States.  If the final destination is a city other than Houston, Texas, an additional fee is incurred for the aliens' transportation.

## Overt Acts

In furtherance of the conspiracy described herein, one or more of the co-conspirators committed, in the Southern District of Texas and elsewhere, one or more of the following overt acts:

1.    Beginning January, 2003 Wilmar Rene Duran-Gomez smuggled illegal aliens into the United States for money.  To this end, he formed two transportation companies, Transportes Junior's and Transporte Sabrina, to facilitate his illegal alien transportation operation.

2.    Duran created or caused to be created trip manifests, which showed the names of the smuggled aliens and their respective debts, under the name of Transportes Junior's which showed that Duran had been in the transportation business beginning since approximately January, 2003.

3

3.  Duran created or caused to be created ledgers, referred to as "pollo lists," which contained the names of smuggled aliens who were harbored at 7315 Ashcroft Drive, Building D,#116, Houston, Texas 77081.

4.  Sometime before November 6, 2006 Bolanos-Garza and Rodriguez-Mendoza went to work for Duran as guards in his illegal alien transportation operation.

5.  Sometime before November 6, 2006 Jose Fuentes, Patricia Holguin, and Mauricio Mercado went to work for Duran as drivers in his illegal alien transportation operation.

6.  On or about November 6, 2006, at Duran's instruction, three unknown co-conspirators delivered illegal aliens to 7315 Ashcroft Drive, Building D-#116, Houston, Texas 77081. The load of smuggled aliens included Abelardo Sagastume. Hector LNU, an illegal alien, had already been delivered to 7315 Ashcroft Drive, Building D, #116, Houston, Texas 77081, when Sagastume arrived.

7.  Upon arrival on or about November 6, 2006 Jose Bolanos-Garza and Efrain Rodriguez-Mendoza opened the warehouse overhead garage door and allowed the illegal aliens to enter the warehouse. Bolanos-Garza, and Rodriguez-Mendoza gave the illegal aliens instructions to

4

undress completely with the exception of underwear; to not talk, make noise, or wander in the hallways.

8. On or about November 7, 2006 Bolanos-Garza and Rodriguez-Mendoza informed the illegal aliens there was a fire in the warehouse. Shortly thereafter, Bolanos-Garza and Rodriguez-Mendoza loaded the illegal aliens in two vans and removed the aliens from the warehouse due to the fire.

9. On or about about November 7, 2006, upon returning to the warehouse after the fire, Bolanos-Garza called Duran, whom he referred to as "Carnalito," to inform him of the fire incident. Duran went to the warehouse to determine what had occurred. Bolanos-Garza told him that the illegal aliens had set the fire in an attempt to escape from the warehouse.

10. Duran ordered the aliens beaten until they revealed who had set the fire. Duran, Bolanos-Garza and Rodriguez-Mendoza began a series of beatings of the illegal aliens which lasted for several days. During this time frame, it was determined that Hector LNU was responsible for the fire and it was also determined that Abelardo Sagastume and Hector LNU had plotted to kill Bolanos-Garza in an attempt to escape from the warehouse. Once their identities were revealed, Duran,

Bolanos-Garza and Rodriguez-Mendoza beat Abelardo Sagastume and Hector LNU as punishment.

11. Duran, Bolanos-Garza, and Rodriguez-Mendoza beat Abelardo Sagastume and Hector LNU to death at 7315 Ashcroft Drive, Building D,#116, Houston, Texas 77081.

12. Duran caused the bodies of Abelardo Sagastume and Hector LNU to be moved from 7315 Ashcroft Drive, Building D,#116, Houston, Texas 77081 to a vacant lot in Fort Bend County, Texas, where the aforementioned bodies were discovered on or about November 15, 2006.

13. After the bodies were discovered, Duran caused to be removed items from his house to include a computer, "pollo lists", approximately $36,000 in U.S. currency, and firearms.

14. On or about the day the bodies were discovered, Duran told a family member to watch the news because he and others had beaten men at the warehouse and that he was in a lot of trouble.

**All in violation of Title 8, United States Code,Section1324(a)(1)(A)(v)(I).**

### Count Two
### [Harboring-8 USC, 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), and 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(iv)]

On or about November 6, 2006, in the Houston Division of the Southern District of Texas,

**WILMAR RENE DURAN-GOMEZ**
aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito"

**JOSE ALBERTO BOLANOS-GARZA aka "El Pelon," aka "Miguel Salinas"**

**EFRAIN RODRIGUEZ-MENDOZA aka "Chino," aka "Chenton," aka "Chente,"aka "Vicente Garduno"**

defendants herein, each aiding and abetting one another, knowing and in reckless disregard of the fact that a certain alien, namely, Abelardo Sagastume, had come to, entered and remained in the United States in violation of law, did conceal, harbor and shield from detection, and attempt to conceal, harbor and shield from detection, Abelardo Sagastume at 7315 Ashcroft Drive, Building D, #116, Houston, Texas, 77081, and did so for the purpose of private financial gain.

The death of Abelardo Sagastume resulted during and in relation to the above described offense.

**In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(iv).**

**Count Three**
**[Harboring-8 USC, 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), and 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(iv)]**

On or about November 6, 2006, in the Houston Division of the Southern District of Texas,

**WILMAR RENE DURAN-GOMEZ**
aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito"

**JOSE ALBERTO BOLANOS-GARZA aka "El Pelon," aka  "Miguel Salinas"**

**EFRAIN RODRIGUEZ-MENDOZA aka "Chino," aka "Chenton," aka "Chente," aka "Vicente Garduno"**

defendants herein, each aiding and abetting one another, knowing and in reckless disregard of the fact that a certain alien, namely, Hector LNU, had come to, entered and remained in the United States in violation of law, did conceal, harbor and shield from detection, and attempt to conceal, harbor and shield from detection, Hector LNU at 7315 Ashcroft Drive, Building D, #116, Houston, Texas 77081, and did so for the purpose of private financial gain.

The death of Hector LNU resulted during and in relation to the above described offense.

**In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(iv).**

## Count Four
### [Conspiracy to Launder Funds – 18 U.S.C. §1956(h)]

**A.**        **INTRODUCTION**

1.      The grand jury adopts, re-alleges, and incorporates herein the allegations in the preceding paragraphs of this Indictment.

**B.**        **THE CONSPIRACY AND ITS OBJECTS**

2.      Beginning on or about January, 2003, and continuing at least through December, 2006,

### WILMAR RENE DURAN-GOMEZ

Defendant herein, did knowingly combine, conspire, confederate and agree with other persons known and unknown to the Grand Jury, to conduct financial transactions that involved the proceeds of specified unlawful activity, that is, acts

chargeable as transporting aliens under Title 8, United States Code, Section 1324(a)(1)(A)(ii), and acts chargeable as harboring an alien under Title 8, United States Code, Section 1324(a)(1)(A)(iii), knowing that the property involved in said financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity (in violation of 18 U.S.C. § 1956(a)(1)(B)(ii)), in violation of Title 18, United States Code, Section 1956(h).

## C.    THE MANNER AND THE MEANS OF THE CONSPIRACY

3.    The conspirators would and did operate businesses known as Transporte Sabrina and Transportes Junior's, at times from a hotel room in Houston, Texas, and at other times from a storefront located at 7315 Ashcroft Drive, Building D, #116, Houston, Texas 77081.

4.    The conspirators would and did harbor aliens in and transport aliens from the business locations, including the storefront at 7315 Ashcroft Drive, Building D, #116, Houston, Texas 77081.

5.    The conspirators would and did place the lease for the storefront located at 7315 Ashcroft Drive, Building D, #116, Houston, Texas 77081 in a nominee name.

6.    The conspirators would and did conduct business transactions for Transportes Junior's almost exclusively in cash or money orders.

7.    The conspirators would and did falsify business records for Transportes Junior's.

8.    The conspirators would and did convert cash to money orders purchased in a nominee name to make lease payments on the storefront at 7315 Ashcroft Drive, Building D, #116, Houston, Texas 77081.

**In violation of Title 18, United States Code, Section 1956(h).**

## NOTICE OF SPECIAL FINDINGS

The Grand Jury repeats, realleges and incorporates the allegations in Count Two of this Indictment. As to Count Two, the defendant **WILMAR RENE DURAN-GOMEZ, aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito"**

1.    was 18 years of age or older at the time of the offense;

2.    intentionally inflicted serious bodily injury that resulted in the death of Abelardo Sagastume (Title 18, United States Code, Section 3591(a)(2)(B));

3.    intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Abelardo Sagastume died as a direct result of such act or acts (Title 18, United States Code, Section 3591(a)(2)(C));

4.    intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Abelardo Sagastume, died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(D));

5.    committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the

10

victim, Abelardo Sagastume (Title 18, United States Code, Section 3592(c)(6));

6.     during the commission of the offense knowingly created a grave risk of death to one or more persons in addition to the victim, Abelardo Sagastume (Title 18, United States Code, Section 3592(c)(5));

7.     intentionally killed or attempted to kill more than one person in a single criminal episode (Title 18, United States Code, Section 3592(c)(16)).

**Pursuant to Title 18, United States Code, Sections 3591 and 3592.**

The Grand Jury repeats, realleges and incorporates the allegations in Count Three of this Indictment. As to Count Three, the defendant **WILMAR RENE DURAN-GOMEZ, aka "El Gordo" aka "Junior," aka "Oscar," aka "Carnalito"**

1.     was 18 years of age or older at the time of the offense;

2.     intentionally inflicted serious bodily injury that resulted in the death of Hector LNU (Title 18, United States Code, Section 3591(a)(2)(B));

3.     intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Hector LNU died as a direct result of such act or acts (Title 18, United States Code, Section 3591(a)(2)(C));

4.     intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Hector LNU, died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(D));

5.     committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim, Hector LNU (Title 18, United States Code, Section 3592(c)(6));

11

6.   during the commission of the offense knowingly created a grave risk of death to one or more persons in addition to the victim, Hector LNU (Title 18, United States Code, Section 3592(c)(5));

7.   intentionally killed or attempted to kill more than one person in a single criminal episode (Title 18, United States Code, Section 3592(c)(16)).

**Pursuant to Title 18, United States Code, Sections 3591 and 3592.**

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
RUBEN R. PEREZ
Assistant United States Attorney

_____
JOE MAGLIOLO
Assistant United States Attorney

12