UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION


UNITED STATES OF AMERICA      .   4:10-CR-00459

VERSUS                        .   HOUSTON, TEXAS

WILMAR RENE DURAN-GOMEZ       .   FEBRUARY 26, 2018

EFRAIN RODRIGUEZ-MENDOZA      .   10:05 A.M.

. . . . . . . . . . . . . . . .


                     TRANSCRIPT OF STATUS CONFERENCE
                 BEFORE THE HONORABLE KENNETH M. HOYT
                     UNITED STATES DISTRICT JUDGE


                              *****

     This transcript has been furnished at public expense under

the Criminal Justice Act and may be used only as authorized by

court order.

     Unauthorized reproduction will result in an assessment

against counsel for the cost of an original and one copy at the

official rate.

     General Order 94-15, United States District Court,

Southern District of Texas.

                              *****

*APPEARANCES*

FOR THE GOVERNMENT:

> Jill J. Stotts
> James B. Nelson
> Assistant United States Attorneys
> 1000 Louisiana
> Suite 2300
> Houston, Texas   77002

FOR DEFENDANT DURAN-GOMEZ:

> Wendell A. Odom, Jr.
> Attorney at Law
> 440 Louisiana Street
> Suite 200
> Houston, Texas   77002

FOR DEFENDANT RODRIGUEZ-MENDOZA:

> Edward A. Mallett
> MALLETT SAPER BERG LLP
> 4306 Yoakum Boulevard
> Suite 400
> Houston, Texas   77006

> David Adler
> DAVID ADLER PC
> 6750 West Loop South
> Suite 120
> Bellaire, Texas   77401

OFFICIAL COURT REPORTER:

> Mayra Malone, CSR, RMR, CRR
> U.S. Courthouse
> 515 Rusk, Room 8004
> Houston, Texas   77002

Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.

*PROCEEDINGS*

THE COURT:  I think we are still missing a couple lawyers, I think.

Mr. Odom, are you standing in for everybody this morning?

MR. ODOM:  No, Judge.  As a matter of fact, we met last week, and we all were anticipating the other lawyers would be here.

THE COURT:  Okay.

MR. ODOM:  Now, there was a bell in the elevator. Maybe they are stuck in that elevator, Judge, but I did anticipate them to be here.

THE COURT:  All right.  We will stare them down as they come in then.

Who is here for the government, by the way?

MS. STOTTS:  Jill Stotts and Jim Nelson.

THE COURT:  Thank you.

MR. ODOM:  I think David Adler is in Fort Bend County this morning.  Ed Mallett is going to cover for him.  I think he's in Judge Palermo's court right now, is what I understand.

THE COURT:  Okay.

MR. MALLETT:  I apologize to the Court.  I thought Judge Palermo was taking me first.  She has a large crowd and they haven't gotten to my case, and I apologize to this Court for having to wait.

THE COURT: Two de merits. How many do you have already?

MR. MALLETT: Two thousand one hundred and eighty four. Mr. Adler was starting in Fort Bend at 8:30 this morning and hoped that he would get here also.

THE COURT: What is your name for the record, please?

MR. MALLETT: Edward Mallett for Mr. Rodriguez-Mendoza.

THE COURT: I think we are ready to proceed then. Are we not?

MR. MALLETT: Yes.

THE COURT: And this is a rescheduled status conference, I believe, reset from January 17. I believe that was the original setting. And at this point, the Court is looking at the agreed joint scheduling order, and I gather I need to have a report or a statement from the government as well as defense concerning the progress as we work our way through this scheduling -- or this joint scheduling order.

Ms. Stotts?

MS. STOTTS: Good morning.

THE COURT: Good morning.

MS. STOTTS: Your Honor, prior to January 17, right prior to January 17th, an order was issued from the Attorney General that stated he would not accept the plea agreement that we had been attempting to work on with Efrain

Rodriguez-Mendoza.  That has complicated things and changed things a little.  Actually, it's changed things a lot with regard to everyone's scheduling, their strategies, what we all envisioned to happen.

I know that Mr. Mallett will explain more what his side of this is, but pretty much they had kind of taken a step back and not been actively dealing with this case on the good faith belief, as we all had, that this plea would go through.  It didn't, so now we are in a different situation where we are looking at two people going to trial versus one person going to trial and also looking at different types of hearings and motions based on the second individual now being in the trial schedule.

Last week, we met, all the attorneys, the four defense attorneys and the three government attorneys met, and we came up with what we hoped will be a scheduling order that we can keep that adds in that second defendant.  The proposed scheduling order that we actually have we can file for the Court.  We did come up with dates, looking at everyone's calendars and what we thought was reasonable with regards to the different motions and hearings that we expected.

THE COURT:  Okay.

MS. STOTTS:  This defendant has a couple different possible claims, I believe.

THE COURT:  "This defendant" being Rodriguez-Mendoza?

MS. STOTTS: Correct. Mr. Rodriguez-Mendoza, that we not had anticipated were going to be issues with Mr. Duran. And so we had to take that into account and added those into the scheduling order, as well, and it just puts everybody kind of in a different position than what they were in before.

THE COURT: Okay. Let's hear, Mr. Mallett, if we can, from you because I think you are on the receiving end of this news, if it is news. It is not now news but it was news. And by that, I know we cannot speak to issues that might require some ex parte communications, and I don't expect that, but I would anticipate that in your discussions with the U.S. Attorney's Office regarding your client and the progression of events going forward, that you may have built in some time for these other -- let's call them other motions or other issues that might be resolved as it relates to your client. And I know we have worked through the years now concerning the preparation of Duran-Gomez's expert witnesses and the preparations and all of that.

So, having said that -- and I'm not sure if you are prepared to speak to any of that or need to at this point, but certainly it needs to be reflected obviously in the scheduling order going forward. I think you agree with that.

MR. MALLETT: I do, Your Honor. And I appreciate the government's statements and they are all correct. I do sort of expand the record slightly. I have stated to the government

what the Court knows, that as this -- as long as this remains a death penalty case, if the death penalty is imposed, then some day in the future some judge will be asked to grade my paper about the effectiveness or ineffectiveness of my service as counsel.  And so I want to talk just a few seconds more, and I ask the Court's indulgence.

THE COURT:  Okay.

MR. MALLETT:  When Mr. Tom Berg became the First Assistant District Attorney for Harris County, Texas, in late January 2017, I became the attorney in charge of the case.  By attrition, I was the remaining lawyer and I solicited my dear friend David Adler to assist me.  He is a fine lawyer and a friend, and he speaks Spanish, which I do not, and our client does not speak English.

Last spring, and we can be unsure of exactly how it grows up, but I have it back as soon as February or certainly early March, we began discussing with the government resolving the case with a plea of guilty and a plea agreement. And those conversations went on.

I will comment -- not to make it trivial, but the sentencing guidelines even contemplate that acceptance of responsibility is impacted by the timeliness of the decision to plead guilty to save the government and the Court time.  And we believed that we could work this out.

As in so many cases this Court has heard, the

defendant debriefed. He was interviewed by the case agents. It went on over parts of two days. They heard his story. They got to see him as a version -- his version of events and what he is like as a possible witness. And I don't know all the mechanics of what goes on within the Justice Department, but I believe, I believe, that the trial team recommended one level up from them that the plea agreement be accepted and the defendant be allowed to plead guilty. We would be severed out and we would be done, except for sentencing and, of course, his continuing duty to cooperate and assist, if there was a trial. So we stopped, basically stopped.

The scheduling order applying to the other defendant caused his lawyers to do things to comply with that order. We let those things pass. We didn't, for example, challenge the constitutionality of the death penalty. Let's just take item one on the list. So I have a letter -- a document, dated January 10, 2018, signed by the Attorney General of the United States, Jefferson B. Sessions III instructing the trial team -- saying, You are authorized and directed to continue to seek the death penalty.

So we are back and we have lost by my count in excess of a year of preparation, and the government team was very gracious, met with us, and the proposal for a scheduling order is the product of a conference among all of the lawyers last week.

THE COURT:  Are you done?

MR. MALLETT:  I'm done.

THE COURT:  All right.  So what would counsel for Mr. Duran-Gomez be doing if it took us several months?

I'm really still talking to counsel for Mr. Rodriguez-Mendoza.  What would counsel -- maybe I should speak to you, Mr. Odom.  What would you be doing if we are looking at six or seven months or more of preparation?  Because I know the struggles that we have gone through relative to the experts and background of individuals.  I don't know where Mr. Mallett is on that, where the -- as the posture of the case, let's say, ended back in the latter part of 2016 as that plea and all of that got worked out.

Are we at a point where we are going to have to sever this case?

MR. ODOM:  Judge, either last year -- either January of this year or late December of last year, we contacted the government, indicated to the government that we were behind on our schedule and talked to the government about possibly resetting our trial because of our experts.  And they said, Well, wait a minute, before you do that, we have got some news for you, and then they told us about the fact that we would have a codefendant on this case.

As a result of that, what we did -- we spent two and a half hours last week trying to work this schedule out.

One of the first things we put that will be due before the Court is severance motions and a severance hearing.  That way, the Court could decide -- if they wanted -- depending on the way they ruled it, that we would be on a different track than Mr. Mallett and Mr. Adler and the government, and I believe that we said --

THE COURT:  That's your new scheduling order?

MR. ODOM:  Yes, Judge.  That's what we anticipated.

THE COURT:  Because this one is not going to work.

MR. ODOM:  And our thought was that if the Court does sever us out, that we would obviously have a -- we would change the schedule and we would have a different trial date.  If the Court didn't, then we would ride along with Mr. Adler and Mr. Mallett and that the Court would make that decision as to which option would be available.

THE COURT:  So what is the final date -- I mean, what is the date that this case would be tried?  It would theoretically be tried in October, in October of this year.

When would that trial go if the parties were joined?

MR. ODOM:  We are presently showing a year later, October of 2019.

THE COURT:  What would be the modification, if any, from your perspective to that schedule -- if I said I'm going to grant a motion and sever you, what amount of time would you

need?

MR. ODOM:  What we were going to propose to the Court was that we do it some time in late summer.

THE COURT:  Of 2019?

MR. ODOM:  Yes.

THE COURT:  Three or four months' difference maybe?

MR. ODOM:  That's correct.

THE COURT:  Where are you in terms of the end of this year?

MR. MALLETT:  We will ask for a severance.

THE COURT:  You will?

MR. MALLETT:  Well, we do now orally, but we contemplated in the scheduling order an opportunity to brief it for the Court, do it with a written pleading.

THE COURT:  Right.  But I'm curious as to whether or not there is enough time built into the current schedule for you to get experts in place and information and dates necessary to defend the defendant.

MR. MALLETT:  No, Your Honor.  I absolutely believe we cannot.  I'm concerned that the proposal that we have agreed to is tight and will require not setting aside all of the responsibilities but some of the responsibilities to give this case a serious and strong priority within the context of the proposal we are presenting today for our side.  We find it tight, even though it contemplates testimony beginning around,

I think, January of 2020.

THE COURT:  Oh, in the new schedule?  Oh, okay.  Go ahead.  I'm sorry.  Are you finished?

MR. MALLETT:  No.  I have nothing to add.

MS. STOTTS:  Your Honor, we sat down and came up with these dates together.  The government will be ready whenever the Court tells us to be ready.

THE COURT:  Let's start tomorrow then.

MS. STOTTS:  That might be a little tight, but we will do what we can.  However, we did sit down with our calendars and timeframes of motions -- most of the motions obviously are filed by the defense and the response is by the government, so we sat down and tried to come up with a date that they believed would be reasonable in the timeframes of what they can get them filed in.  I know Mr. Mallett is afraid some of this will be tight.  We agree that if, you know, something is due on a Friday and they can't get it filed until Monday, we are not going to scream and yell, and hopefully the Court will give us some leeway in that, but hopefully these dates can be such that we can stick to them enough that in October of next year we can actually start this trial.  I know the Court is ready for us to get this trial started.  We are ready to get it started.  So I am hopeful that with these new dates that we can actually have a set trial of whenever it is going to be.

THE COURT:  Have you addressed the defendant --

Mr. Odom's client, Duran-Gomez -- I haven't looked at the file recently and I know I remember seeing their motion concerning constitutionality.  Have you addressed that already, for example?

MS. STOTTS:  With regards to Duran, we did address it and we had a hearing before you in this courtroom.

THE COURT:  I remember that.  You already had on file at that time a written response, I gather?

MS. STOTTS:  We had filed a written response prior to the hearing, and Mr. Mallett is going to want to do the same thing.

THE COURT:  Right.

MS. STOTTS:  And that's the only part of the new proposed joint scheduling order that would not consist of both parties, or all three parties.  Obviously, it has already been filed by Mr. Duran so that part is out as to him.  From there forward, everything applies to everyone moving forward from that date.

THE COURT:  Is there a date in there for you to file that motion other than for severance, the constitutionality issue?

MS. STOTTS:  It is the first filing, Your Honor, of May 21.

THE COURT:  Okay.  I'm not sure there is anything I have to say.  I don't have a magic wand or anything of that

sort.  I think the thing for me to do is to look at your scheduling order, proposed scheduling order and kind of think about it a bit and perhaps -- when is your next -- when do you show being the next status conference according to that schedule?

MS. STOTTS:  August 24, Your Honor.

THE COURT:  We need to do something before then, I think, because we are going to have to have a hearing on this proposed constitutionality motion that is going to be filed in May, right?

MS. STOTTS:  That one is July 9, the constitutionality motion.

THE COURT:  Okay.  Well, I'm thinking that at that point we are going to have to take a look at the schedule to make sure we can maintain that schedule because I haven't talked to the Rodriguez-Mendoza team about experts and budgets and all of that stuff.  When all of that went out the door, I'm not sure where it all fell, but I suspect that's a conversation we are going to have to have at some point because I don't think you have -- with all due respect to the government, you probably don't have a current budget in place.

MR. MALLETT:  That's correct, Your Honor.

THE COURT:  And now we have got to wrestle with the B team upstairs, the A team -- we are the B team -- and see if we can get some clarity in going-forward stuff.

MR. MALLETT:  I'm so glad the Court has a little bit of a sense of humor and a sense of irony.

THE COURT:  Well, I'm glad you said that because when they read the transcript, they won't think I'm being disrespectful.

MR. MALLETT:  I think Wendell Odom and I attended the same high school.  But we were absolutely ready if our client pleased and if the Court allowed to let my client plead guilty and give testimony in the codefendant's case.  We believe that is how it was going, and now we have to start all over.  They have had the benefit of the two days of debriefing, if it does give them any benefit, and we have months and months of relatively passive participation.

THE COURT:  All right.  Well, let me do this.  Let me just simply ask you to go ahead and file that if you have not already.  You may have filed a motion.  We will pull it up. Let me take a look at it, and it may be that sometime early next week -- let's don't consider it to be on hold.  Let's consider it to be a motion -- I mean a motion to be granted, but I might decide to have a telephonic conversation with you so that I make sure that I have got a full appreciation for what you have proposed, and there is some realistic work that has to be done in the next 20 days or so by the Rodriguez-Mendoza team to make sure that on a going-forward basis they have got the team necessary to provide the defense

that's necessary or appropriate for him.

Is there anything else I can say?

MR. MALLETT:  I would only add this, Your Honor:  On the schedule that we are submitting to the Court to which we have agreed, we need to file our motion on constitutionality according to the proposal on 5/21, May 21, and a severance motion on August 3rd.

THE COURT:  I wish we could get those sooner.

MR. MALLETT:  Well, I was going to say if, after the Court has reflected on this, as the Court indicated to us, the Court would like to see a severance motion sooner, we certainly would be happy to accommodate.

THE COURT:  And I'm going to have to have certainly a response, not just from the government but from the Duran-Gomez team, as well, depending on who files it, as to whether or not there is a joinder or not by the other party, and, secondly, whether -- and I would certainly -- if I need to see some stuff filed under seal to me that you might not want the government to know about, I need to know who is going to be doing it.  I think you all need to think about that because there may be some things that certainly I would not be aware of and would not come to my attention under a motion, let's say the plain vanilla motion, that I would not want to see, for sure.  I want to see something that tells me what the hazards are of me going forward with the team, or not.  I think that's critical that we

don't -- that we do it once and we are done.

MR. ODOM:  I certainly anticipate Duran-Gomez will also be filing a motion to sever, as well.

THE COURT:  A separate motion?

MR. ODOM:  That's right.  A separate motion.

THE COURT:  And that's my point.  That I certainly need to make sure that there are -- whatever bases there are, that I know what those bases are, other than we just don't think that these two parties will be able to be tried together fairly, jointly.

Anything else?

MS. STOTTS:  No, Your Honor.  Thank you.

MR. MALLETT:  No, Your Honor.

MR. ODOM:  No, Your Honor.

THE COURT:  Thank you very much, lady and gentlemen. You may be excused.

(*Court adjourned at* 10:37 a.m.)

* * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled cause.

Date: April 2, 2018

/s/ Mayra Malone
-----------------------------------------
Mayra Malone, CSR, RMR, CRR
Official Court Reporter