IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


UNITED STATES OF AMERICA        )
                                )
v.                              )        NO. H-10-CR-459-S
                                )
WILMAR RENE DURAN-GOMEZ,        )        November 21, 2013
et al.


TELECONFERENCE
BEFORE THE HONORABLE KENNETH M. HOYT


For the Government:          Joseph Magliolo, AUSA
                             Ruben Perez, AUSA
                             U. S. Attorney's Office
                             1000 Louisiana, Suite 2300
                             Houston, TX 77002

For Defendant                Wendell A. Odom, Jr.
Duran-Gomez:                 Neal Davis, III
                             Law Offices of Wendell Odom &
                               Neal Davis, III
                             440 Louisiana, Suite 200
                             Houston, TX 77002

For Defendant                Mervyn M. Mosbacker, Jr.
Bolanos-Garza:               Attorney at Law
                             2777 Allen Parkway, Suite 1000
                             Houston, TX 77019

For Defendant                Edward A. Mallett
Rodriguez-Mendoza:           Thomas S. Berg
                             Mallett Saper Berg, LLP
                             4306 Yoakum Blvd., Suite 400
                             Houston, TX 77006

2

For Defendant Fuentes:        Kenneth W. McGuire
                              McGuire Law Firm
                              P.O. Box 79535
                              Houston, TX  77279

For Defendant Holguin:        John Friesell
                              Friesell Westerlage, PLLC
                              1021 Main Street
                              Suite 1250
                              Houston, TX 77002

For Defendant Mercado:        Thomas A. Glenn
                              Attorney at Law
                              2500 City West Blvd., Suite 300
                              Houston, TX  77042

Court Reporter:               Bruce Slavin, RPR, CMR

Proceedings reported by mechanical stenography and produced by computer-aided transcription.

THE COURT:  Gentlemen, let me just ask if you could announce not just your name but, also, the party that you're representing so the court reporter can take down and properly identify each of you.  All right?

We'll start back with you Mr. Mallett.

MR. MALLETT:  Edward Mallett and Thomas Berg representing Efrain Rodriguez-Mendoza, also known as "Vicente Garduno" in Case No. H-10-459.

THE COURT:  All right.  Anyone else on the line?

MR. FRIESELL:  John Friesell for Patricia Holguin.

THE COURT:  Okay.

MR. McGUIRE:  Good morning, Your Honor.  Ken McGuire for Jose Fuentes.

THE COURT:  All right.

MR. GLENN:  Thomas Glenn for Mauricio Mercado.

THE COURT:  All right.  No one on the line yet for Jose Alberto Garza?  Or Duran, Wilmar Duran-Gomez?

Okay.  Well, gentlemen, we'll just kind of hold for a few more minutes to make sure that we're not missing anyone in this discussion, if you don't mind.

MR. PEREZ:  Hello.

THE COURT:  We hear you and who is joining us so far?

MR. PEREZ:  Ruben Perez and Joe Magliolo.  Good morning, Your Honor.

THE COURT:  Okay.  These are the government people. Right?

MR. PEREZ:  The United States of America.

THE COURT:  The whole United States.  Right?

MR. PEREZ:  Yes, Your Honor.

THE COURT:  Okay.

MR. PEREZ:  We called Cynthia first and then she said, "No.  You're supposed to call this number."

I said, "Oh.  Okay."

THE COURT:  You're in good shape.  I think we're still waiting on Wilmar Duran-Gomez and Jose Bolanos-Garza representatives.

MR. PEREZ:  Okay.  That will be Wendell Odom and Neal Davis.  And Jose Bolanos-Garza, that would be Mervyn Mosbacker.

THE COURT:  Yeah.  And he might not be joining us. I don't know.  I think we got notice to everyone, but I am just trying to make sure that I have given some time for everyone to be on the line.

Are all of you hearing me well?

MR. PEREZ:  I am hearing you very well, Your Honor.

UNIDENTIFIED SPEAKERS:  "Yes, Your Honor."

THE COURT:  Very good.  Now, I have had you on moot so that you don't hear my conversations in the background. I'm not talking to anyone and I'm not talking to myself, but

every now and then I have a conversation.  So, we'll wait a couple more minutes, gentlemen.

MR. PEREZ:  Judge, I just finished talking to Wendell Odom.

MR. ODOM:  Sorry, Judge.

THE COURT:  It's no problem.  By the way, who is on the line for Wilmar Rene --

MR. ODOM:  Wendell Odom and Neal Davis are here for Wilmar Duran-Gomez.

MR. PEREZ:  Judge, let me call Mr. Mosbacker, if you don't mind, to see if he may be thinking the same thing.

THE COURT:  All right.  Would you please.

MR. PEREZ:  Yes, Your Honor.

THE COURT:  I believe that's Mr. Mosbacker joining us.  Right?

MR. MOSBACKER:  Yes, it is, Your Honor.

THE COURT:  Good morning.

Gentlemen, thank you very much for joining me this morning.

This is not a call that I need to make on any issue of significance, except I just need to know and have the record reflect that we're in touch with each other, and I need to know what the government is up to, where are you going from here.

I believe you have added a defendant and that

defendant is on the list to be determined, I guess, by justice, whether death should be pursued -- the death penalty should be pursued as to him.  And, so, I just need to get a sense of that direction and to remind each of you how critical and important it is that you maintain your records and submit documentations for payment all along the way.

I believe the chief judge, our new chief, has given me a signal -- and not me personally -- but a signal that if you submit -- if you have submitted or submit a budget to me that you and I can agree upon and as long as it's within reason and I submit it to him, he will, generally, approve that budget so that I can make those payments -- get those payments taken care of locally without resubmitting them to him until we bump the top.

I mean, when we reach the top of the limit -- and I am saying "when", not that I am expecting that you would -- but when you've exhausted your money under that budget, if that occurs, then certainly a second approval would be required and some different justification.

But that seems to me to give us a little bit better leeway on getting you paid and we don't get hung up as some of the other judges and/or attorneys have done in the past.

Am I clear on that with all?

MR. MOSBACKER:  Yes, Your Honor.

THE COURT:  Very good.

So, Mr. Perez -- I'm not sure.  I guess I should just go ahead and ask you.  Could you bring us up to date, and then we'll have comment, if any, from any other counsel.

MR. MAGLIOLO:  Your Honor, it's Joe Magliolo.

THE COURT:  Okay.  I have always called the wrong name.  Okay.  Mr. Magliolo.

MR. MAGLIOLO:  We're almost interchangeable.

But what has happened -- The Court is exactly right.  A third defendant has been arrested.  There is an issue as to what we will do with the memo.  We have been in contact with counsel for the defense and there is a little snafu, I guess you would say, that took a couple -- two to three months out of the time frame.  No one's fault.  But it has been resolved now; so, we're in touch with counsel for the defense.

As the Court well knows, the way this will work is we will prepare a memo -- in fact, we're in the process of preparing a memo.  It will work its way to the United States Attorney.  The defense then has a reasonable amount of time to tell the United States Attorney the mitigating circumstances.  It's his decision as to whether or not to send a "seek" or "no-seek" request to the

Department of Justice.  And that's going to take --

The general holdup on that, from the defense, is that they need to have their mitigation specialist out doing whatever they need to do, and that takes a period of time before, first, they can present it to the United States Attorney; and then, if that doesn't work, it goes into the DOJ with a "seek" request and they'll have to go to DC and re-present the --

THE COURT:  Right.  Remind me, Mr. Magliolo, who that -- because maybe I don't have them on the line.  Do I?

MR. MAGLIOLO:  Yes.  The lawyers are Tom Berg and --

MR. MALLETT:  Ed Mallett.

MR. MAGLIOLO:  -- Ed Mallett.

THE COURT:  Yeah, I do have Tom and Mallett on the line.  Right?

MR. BERG:  Yes, sir.

THE COURT:  Okay.  Good deal.

I want to make sure I hadn't dropped the ball on recognizing counsel for that added defendant -- I say "added" -- the arrested defendant and, also, to make sure that you -- "you" meaning the two of you -- submit a budget pronto, if you have not already, so that I can take a look at that and get some approval, because these things can move fairly slow, or fast, depending upon the approvals that are

needed.  So, that was simply to put you guys on notice of that as well.

Now, the other four defendants -- there is no "seek" regarding those or will not be any seeking of the death penalty as relates to those, as I understand, Mr. Magliolo.  Is that still the case?

MR. PEREZ:  The other three, Your Honor, are not at issue, as far as "seek" or "not seek".

THE COURT:  Right.

MR. MAGLIOLO:  There are three charged with capital murder.  One is a "seek", one is already a "no seek" and, as the Court said, a third one is still somewhat up in the air. The other three defendants are basically drivers and they are not in the death penalty arena.

THE COURT:  Very good.  All right.

All right.  That's what I needed to accomplish, gentlemen.  So, let me ask -- We'll start at the top of the list with the Duran-Gomez counsel.

Is there any -- and I think I have reset this case to January, February or something.

MR. PEREZ:  I think we're looking at a January 21st date, and we have on file a Defendants' unopposed motion for continuance that we have contacted all parties, and because of the reasons that have already been expressed it is opposed.

THE COURT:  Yeah.  I wanted to make sure I recognize that and had some sense of how to deal with that.

I think what I probably need to do is, rather than set it as an instance where the parties are to inform the Court on status, I think I just want to set another hard date and let you all keep reminding me -- and yourselves as well -- of an impending trial date so that we have got something hard to look at.

Anything else?

MR. MAGLIOLO:  Judge --

THE COURT:  Who is speaking?

MR. MAGLIOLO:  It's Joe Magliolo again, Your Honor.

THE COURT:  Okay.  Go ahead.

MR. MAGLIOLO:  If we could -- I mean, realistically, this case is probably at least six months away from a trial.

THE COURT:  Well, yeah, I'd say longer than that.

MR. MAGLIOLO:  Yeah.  But if we can just turn a trial setting into a -- let's call it a "status setting" so at that time we can come in and tell the Court where we are with everything and --

THE COURT:  Well, that might be smart.  Yeah.  You're right.  And we can either do it by telephonic conference or by appearance in court.  So, I'll set a date that would be -- yeah, you are probably right -- rather than

a trial date, set it as a status date.  And I don't think anyone loses any motion opportunities as a result of that.

MR. MAGLIOLO:  And for what it's worth, Your Honor, all counsel have been -- we're talking to one another and working with one another.  Everybody seems to be -- although we may differ on what the end should be, as far as discovery, working together, keeping an open line with everybody, the government's position is everybody has been doing that exceptionally well.  I assume everybody would probably agree with that.

THE COURT:  All right.

UNIDENTIFIED SPEAKER:  Yes.

UNIDENTIFIED SPEAKER:  Yes.

THE COURT:  So, going down the list for Garza, no comment yet?

MR. MOSBACKER:  No, Your Honor.  We're in the process of [inaudible] with the government on this case.

THE COURT:  All right.  And Mendoza?  I have just spoken with you all.  You will be getting a budget to me?

(No response)

THE COURT:  Mr. Mallett?

MR. BERG:  This is Tom Berg, Judge.

We are in our budget-development stage.  I am doing -- We have reached out to the Mexican government through the Mexican consulate.  They have provided us

with -- at least, the preliminary part -- a mitigation specialist, who is planning a trip to Mexico to develop our mitigation report [inaudible] readily accessible portion of Mexico, which is [inaudible].  We may need to make a trip down there as well.

THE COURT:  But you're developing your budget?  That's the key.

MR. BERG:  We are developing our budget at this point and we do have a mitigation specialist provided by the Mexican government at this time; so, we're not spending CJA money yet, but we will.  And as soon as that firms up with our mitigation specialist we will make a trip to Mexico in January.  She's already made a trip here to meet with our client, a second trip.  Again, we're doing this in accordance with the Mexican consulate here.  They have got a program for the defense of Mexican nationals who are charged in a death penalty case.

THE COURT:  All right.  Very good.

All right.  Fuentes.  Anything?

MR. McGUIRE:  No, Your Honor.  We have been working with the government and, as Mr. Magliolo said, that we really don't have any issues to bring to the Court.

THE COURT:  And I think I know the situation with Holguin.

Mercado.

MR. GLENN:  We are working with the government as best we can, Your Honor.  We have no issues.

THE COURT:  Well, I take it there are no other issues that I need to take up.  Correct?

MR. ODOM:  Judge, this is Wendell Odom for Duran-Gomez.

THE COURT:  Okay.

MR. ODOM:  We have a budget question and it's something that doesn't need to be *ex parte*, I don't think. As far as travel is concerned on our budget, we have a travel request.

Do we do that through the government travel agency like we have done it before?  Is that how that's supposed to be handled?

THE COURT:  I'm not sure how that operates on that side, but I know, with me, it would have to be a reimbursable item.  With that said, I think you can get -- I'm not sure if it doesn't operate more smoothly.

MR. ODOM:  We'll try to run that down, then, Judge.

MR. MAGLIOLO:  Anything we can do to help, they know we're available.

THE COURT:  Okay.  Very good.

And that same thing would apply to Mendoza, but I think, you know -- And take a look at how the government has provided funding for travel outside of the

CJA plan, assuming that that is what's happening, but does not require you coming directly through the Court, particularly for any trip or journey to Washington.

MR. ODOM:  Judge, this would be a trip we have talked to the government about.  We can see a witness in Peru, and that's why we're a little bit befuddled on how we go about doing it.

MR. DAVIS:  Judge, this is Neal Davis.

I think what we did in the past is that we just got approval from the court to make travel arrangements with the government travel agents.

THE COURT:  That's correct.

MR. DAVIS:  I think that's what we can do in Peru.

THE COURT:  That's correct.  I entered an order approving it for that effort, yeah.

MR. DAVIS:  Right.  Thank you, Judge.

THE COURT:  All right, gentlemen.  Thank you very much.  Y'all have a good day.

COURT REPORTER'S CERTIFICATE

I, BRUCE SLAVIN, certify that pursuant to 28 USC § 753 the foregoing is a correct transcript from the record of proceedings in the above entitled matter, to the best of my ability.

*s/Bruce Slavin*
BRUCE SLAVIN, RPR, CMR