**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

UNITED STATES OF AMERICA        *        4:10-CR-459
                                *        Houston, Texas
VS.                             *
                                *        10:10 a.m.
WILMAR RENE DURAN-GOMEZ,        *        October 11, 2012
ET al

**STATUS CONFERENCE**


**BEFORE THE HONORABLE KENNETH M. HOYT**
**UNITED STATES DISTRICT JUDGE**


**APPEARANCES:**

**FOR THE GOVERNMENT:**
Ruben R. Perez
OFFICE OF THE U.S. ATTORNEY
1000 Louisiana, Suite 2300
Houston, Texas 77002
713.567.9347

**FOR DEFENDANT WILMAR RENE DURAN-GOMEZ:**
Wendell A. Odom, Jr. and Neil Davis, III
LAW OFFICES OF WENDELL ODOM & NEAL DAVIS, III
440 Louisiana, Suite 200
Houston, Texas 77002
713.223.5575


**FOR DEFENDANT JOSE ALBERTO BOLANOS-GARZA:**
Gerardo S. Montalvo
THE MONTALVO LAW FIRM, PLLC
Park Central Plaza
1111 North Loop West, Suite 820
Houston, Texas 77008
713.526.5002

**FOR DEFENDANT PATRICIA HOLGUIN:**
John Riley Friesell
FRIESELL WESTERLAGE, PLLC
One City Centre
1021 Main Street, Suite 1250
Houston, Texas 77002
713.236.9177


**FOR DEFENDANT MAURICIO MERCADO:**
Thomas A. Glenn
Attorney at Law
2500 City West Blvd., Suite 300
Houston, Texas 77042
713.266.4600


Court Reporter:
Johnny C. Sanchez, RPR, RMR, CRR
515 Rusk, #8004
Houston, Texas 77002
713.250.5581

Proceedings recorded by mechanical stenography.  Transcript produced by computer-assisted transcription.

THE COURT:  Good morning, ladies and gentlemen. I called this conference because of the notice that has been recently filed that you each obviously are aware of in this case from the Department of Justice.  And to get some sense from both sides direction that you want to go, in terms of time preparations and how we go forward in this case.  But as well also to make sure that the defense and defendants' perspective, that we have eyes on what the law permits us to do, in terms of lawyers and representation. So I think that at least Mr. Mosbacker and Mr. Montalvo, there's going to be a parting ways of one way or the other. And I believe you've got the same defendant in a different case, I believe; is that right?  Who am I looking at?  Let me get my glasses back on.

MR. MONTALVO:  I lost a little weight.  That's probably why you couldn't see me.

THE COURT:  Must be my glasses.  But you are representing Mr. Garza, I believe, in a immigration, let's call it, for lack of a better term, immigration case that's been sort of sitting on the back burner for a long time. So that representation certainly continues, or will pick up -- whatever the appropriate way to say that -- but in terms of the question of the -- your -- the dual representation of Mr. Garza in this case that needs to end October 4th, whatever that date is.  So I expect we can

talk about that a little afterwards, but we can also make sure that we have our administrative parts of this in proper order.

MR. MONTALVO:  That's correct, Your Honor.  We have informed Mr. Garza.

THE COURT:  Sure.  So, gentlemen, what's your pleasure?  The government is ready to proceed, and who is representing the government?

MR. PEREZ:  The United States is represented by Ruben Perez, Joe Magliolo and Jennie Basile, Your Honor.

THE COURT:  All right.  Good morning.  And representing Mr. Duran-Gomez?

MR. ODOM:  Good morning, Judge.  Wendell Odem, Neal Davis representing Mr. Duran-Gomez.

THE COURT:  All right.  And I think my remarks about representation don't apply to your client; right?

MR. ODOM:  That's correct.

THE COURT:  What about Mr. Garza -- José Garza?

MR. MOSBACKER:  Mervyn Mosbacker and Jerry Montolvo for Mr.  Bolanos-Garza.

THE COURT:  And Mr. Fuentes, I believe, is represented by Mr. McGuire, and I gather that his client -- is Mr. Fuentes, José Fuentes in the courtroom?  He's not here.  He's apparently not compelled by the proceeding.  Okay.  Mr. Hoguin?

MR. FRIESELL:  John Friesell for Ms. Hoguin. She's present.

THE COURT:  Okay.  And Mr. Mercado?

MR. GLEN:  Thomas Glen here for Mr. Mercado.

THE COURT:  I believe also from client's perspective is it Mr. Gomez your client?

MR. ODOM:  Duran-Gomez, yes, sir, Judge.

THE COURT:  Your client is in the courtroom?

MR. ODOM:  Yes, he's here, Judge.

THE COURT:  And as well, Mr. Mosbacker, is your client present?

MR. MOSBACKER:  Yes, Your Honor.

THE COURT:  And then let's see.  I believe McGuire and his client are not here.  Mercado, I believe, is out of the state, isn't he, by permission of the Court --

MR. GLEN:  That's correct, Your Honor.

THE COURT:  -- on condition of employment?

And what about your client, Mr. Friesell?

MR. FRIESELL:  She's here.

THE COURT:  I think I said "he," but I apologize.

MR. FRIESELL:  She.

THE COURT:  She's present.  Okay.  Very good.

And I just wanted to identify them for the

record so that we can make sure that whatever concerns, if any, they might have, they can express them to you about any scheduling.

So what's our schedule going to look like, Mr. Perez.

MR. PEREZ:  Your Honor, we're ready.

THE COURT:  You-all are kind of driving the wagon here.

MR. PEREZ:  We're ready, but the defense attorneys representing Mr. Duran have filed a motion for continuance, and we certainly are unopposed to that motion.

THE COURT:  I saw that, but I'm not sure -- I guess I don't know -- what kind of discovery is out there. We're simply talking about events that occurred on a particular occasion that is really the focus of the indictment itself, as opposed to some historical data, more so; right?

MR. PEREZ:  Generally, yes, Your Honor.  But we have provided discovery to the defense attorneys, and there are some prior incidents involving Mr. Duran that we have also provided discovery on.

THE COURT:  Okay.  Very good.

MR. PEREZ:  We try to be as fast in discovery as we possibly can, Your Honor.

THE COURT:  Mr. Odom, do you want to speak?

MR. ODOM:  Yes, Judge.  They have given us a great deal of documentation for discovery.

I will let the Court know that our efforts up to this point have been primarily dealing with the Department of Justice and their notification.  And while we intend to appeal their decision and we have spent time on that, as I understand it on the issues, we are now, while we've always been somewhat focused on trial, we are now focused on trial.

THE COURT:  Okay.

MR. ODOM:  And so, it's sort of a different stage for us in the case.  While there's a lot of discovery, it remains difficult for us in trying to find certain people and talk to certain people because of the nature of the fact that so many of them are not citizens, and in trying to -- trying to go through what we need to go through to find the people and talk to the people that we think we would need to get ready to go to trial.

We generally talked to the government, and said, "What do you think a target date in the spring of next year?"  March or April would be a realistic date.  And I think that we have a consensus that would be a good target date to shoot for, and let us start now getting ready to go to trial, as opposed to dealing with the administrative decision as to whether or not --

THE COURT: You said you do intend to appeal?

MR. ODOM: Well, the -- yes, sir.

THE COURT: And that's an administrative process within the department, though, is it not?

MR. ODOM: Right. And my understanding of this -- and I've never done an appeal from one of these decisions -- my understanding is it doesn't have timetables attached to it as such.

THE COURT: Meaning they can do something soon, or never, more or less?

MR. ODOM: Yes. We don't have 30 days to give notice of appeal, things of that nature.

THE COURT: And they're not constrained, necessarily. I don't know. What constraints are there, once your appeal is in place, or once the notice is in place, are they constrained to get you a response within a certain timeframe?

MR. ODOM: I have no idea.

THE COURT: Do know. Not that you're aware of either, Mr. Perez?

MR. PEREZ: Not that I'm aware of.

MR. ODOM: I think the ruling stands until and unless they say otherwise.

THE COURT: Okay. And the point of that, obviously, is for me to make sure I have an appreciation

for your understanding, and to make sure that as we move forward, the sole and only compelling thing that I have is the trial itself.

MR. ODOM:  Right.

THE COURT:  I cannot concern myself with the appellate process.  And I know you know that, but I think that's what I would be concerned about.

Can -- is the evidence against, I gather, that arises out of one or single indictment itself.  This is not -- and what I'm going -- getting ready to go at is, is the -- is there going to be a problem, and what concerns should the Court have about non-capital, let's say, defendants who are going to get dragged along with the defendant who is the subject of a capital indictment?  What concern should I have?  Am I going -- is the evidence going to be the same, irrespective?

MR. PEREZ:  We do think that there will be some defendants, one defendant or maybe more than one defendant who will be brought into the United States.

THE COURT:  But if we have one, one defendant that's going to go to trial, the question is whether or not -- I don't mean to create a problem here -- I'm just asking whether or not that defendant can get a fair trial within the trial.  Is there going to be a problem, I guess, is what I'm saying?

MR. MAGLIOLO:  I can address that, Your Honor.

We do not believe there will be, because the evidence -- there will not be evidence relating to the defendants who we are not seeking death on that would not be, we believe, evidence that would be properly submitted in against the defendant who we are seeking the death penalty.

THE COURT:  Okay.

MR. MAGLIOLO:  So it shouldn't be a problem.

THE COURT:  You can see some distance or separation between the evidence that you might need to put on in one aspect of the case, let's say, against Mr. Gomez, is not necessarily being there for the other, or any other defendant.

MR. MAGLIOLO:  Or the death case, it would be the same evidence with additional evidence --

THE COURT:  Okay.

MR. MAGLIOLO:  -- relating to the deaths.

The three -- three of the defendants are drivers in the case which evidence would go to the smuggling conspiracy, and then two of the defendants are more actively involved.  And it is our belief, but we don't know, that one of those defendants is going to plead guilty.

So we expect, though, as the Court well

knows, there's no guarantee --

THE COURT:  I understand.

MR. MAGLIOLO:  -- that this case will come down to a trial against one defendant.

THE COURT:  But the evidence in the case in main, in the main, I gather is going to kind of a single fabric of evidence?

MR. MAGLIOLO:  Yes, Your Honor.  It will be as to the conspiracy of which the drivers were material in, and then the additional evidence as to the circumstances that surrounded the deaths of the two individuals.

THE COURT:  Okay.  That makes it --

MR. MAGLIOLO:  May I have add one thing?

THE COURT:  -- a little simpler.  It may not necessarily be simple.  Go ahead.

MR. MAGLIOLO:  I know the Court has dealt with Mr. Perez and I, and I think Ms. Basile over the years, just so the record is clear, this is going to be an open file case.  We have already worked with the defendants' attorneys in the first portion of this case in providing discovery.  But as to providing access to witnesses, providing whatever we can so that when this case starts, both sides will know the same thing about the case and there's nothing -- we don't expect there's going to be any problems with surprise in this case that we feel this

case is such of serious nature that both sides need to know everything as we start this trial. And that's going to be the prosecution -- I know the defense wants to know -- is going to be the prosecution team's --

MR. PEREZ: Goal.

MR. MAGLIOLO: -- goal to make sure they do know. So this is not going to be a trial by surprise or ambush. This is something we're going to go into everybody knowing the facts, we put it on before the jury and let them decide what they need to do.

THE COURT: I see you have a prosecutor in the immigration case as well, against Mr. Garza. You probably hadn't thought about it recently, Mr. Perez. But here's my concern: What is the prospect of this case -- and I'm not sure -- is this case going to have to be tried separately or not?

MR. PEREZ: The illegal reentry, Your Honor?

THE COURT: Yes.

MR. MONTALVO: Your Honor, I don't anticipate a trial in that case.

THE COURT: Okay.

MR. MONTALVO: We're talking towards working out an agreement in that case.

THE COURT: The reason I ask is because once you start into these cases, the question of whether or not

the evidence is going to be there, its really not going to be an issue.  I suspect that at some point we'll cross that line and you'll be talking about how he got in the country or how -- I mean, some of that might come in.  Just trying to make sure these weren't going to end up being tried together; or if they were, whether that's proper or improper.  And I think you relieved me of my concern about that.  I think.

MR. MONTALVO:  That's correct.

THE COURT:  Okay.  Then what we need to do, then, is I guess do two -- well, one thing -- is to grant the continuance that has been requested by Mr. Odom, but also I think I need to require that there be some joint status statements along the way.  I don't want to wake up on April Fool's day and you say, "You know, we haven't really been able to do anything.  We have been sitting around waiting on you, Judge, to tell us what to do."  Not that you would do that.  But the point I'm making is if we had a 60-day status report and that would say, "We're still good on April whatever," or whatever that date is, and then schedule any other dates that you might need if there are -- if there is any need.  And if it's going to be an open file, I gather we are not going to be flooded with a lot of motions and -- or contested type motions, anyway.

MR. ODOM:  Judge, hopefully there won't be many

contested issues in regards to discovery.

THE COURT:  Right.

MR. ODOM:  I do anticipate that there's going to be certainly some motions that should be heard because of the nature of the case.

THE COURT:  Oh, yes.  I understand that.

MR. ODOM:  Somewhere in the framework, I agree we need to --

THE COURT:  Are we talking about motions dealing with, for example, dealing with the question of whether or not the defendant can get a fair trial based upon the length of time?

MR. ODOM:  Yes, Judge.

THE COURT:  I saw something in the file, I believe, in that regard.

Then we need to have a date by which those motions should be filed, and then a response date.  And, of course, following that, the question of whether or not I will need some evidence or not on that, or argument only, and hopefully get that resolved.

So what is a good date, gentlemen, in April? Is that sort of a consensus date, that April might be a good time, 2013?

MR. ODOM:  That's a good date.

MR. PEREZ:  That is good for us as well, Your

Honor.

MR. ODOM:  My birthday is the 16th, Judge.

THE COURT:  Let's do it on the 16th.  That's the day after the shakedown day, isn't it?

MR. ODOM:  That's right.

THE COURT:  You'll feel light in the pocket.  You'll probably be ready to go to trial.

MR. ODOM:  That's right.

THE COURT:  Anything in particular, Diane, sometime in April?  I don't think we planned that far away.

CASE MANAGER:  No, sir.  We have it open.

THE COURT:  I'm planning to take -- I'm taking senior status, as some of you might know, and I plan to take a year off.  So should I start it on April 15th?

MR. PEREZ:  Can we join you?

THE COURT:  Just kidding.  Well, they won't give me a sabbatical if I go off and write my memoirs.

Anyway, let's look at either the -- and I'd like -- generally talked about starting on a Tuesday, rather than a Monday.  So we are looking at April 9th.  We could skip your birthday, if you want to, Mr. Odom.  April 9th or 23rd, basically.

MR. ODOM:  Either one.  Whatever the Court's preference.  Obviously not on my docket.

THE COURT:  Let's call it April 9th.  That way

we know you'll want to go on vacation after that on the birthday trip after the trial.

CASE MANAGER: Actually, we do have a class certification on April 9th.

THE COURT: I can't believe we planned that far out there.

All right. Then let's say the 23rd. April 23. And we're going to backup, now, and look at March 25th as the motion cutoff date, let's call it. We'll then call response date April 8th. And call it a joint status report March 18th.

And I intentionally set it a week before you need to file your motions so you can tell whether or not you really need a different time schedule. March 18th would be joint status report, government and defense, saying that the date of April 23rd for trial is still a good date, or we need to have certain hearings or motion conferences or whatever. We can set a schedule notice in that timeframe, after March 18th, if we need to have some hearings and conferences here in court. All right?

MR. ODOM: Judge, we have one additional request.

THE COURT: Okay.

MR. ODOM: Now that we are gearing up for a fact intensive trial, we would request that the defendant,

if possible, be transferred from Joe Corley to FDC Houston so that that can facilitate us being able to prepare to go to trial.  We have a number of tapes that -- not tapes, but a number of transcripts that we need to review with him, and it keeps us from the two-hour drive to get to Corley and back in order to prepare for trial.

THE COURT:  I think I could make that request. I'm not sure it can be enforced, but here's what I would suggest as an alternative, and I would look at it this way, that at the very least we need to have him --

MR. ODOM:  Federal Detention Center.

THE COURT:  -- detention center, have him there for blocks of time over the next 90 days, like two or three weeks, at least, every other month, at whatever times they can make him available to you.  That would -- that would get you through November, December, January and February perhaps at least 60 days if there is a housing problem, they should be able to hold him there for 30 days and maybe send him back or whatever.

So I need to find -- we'll find out if I need to enter some kind of order to that effect.  I would like for this to be -- let me find out how I should approach it before I enter an order and before I ask you to write a letter or anything of that sort.  It may require a motion, formal motion, that he be made available starting

some particular date.  If so, Diane can probably get you that information within the next couple of weeks, or less.

MR. ODOM:  Thank you.

THE COURT:  Anything else, gentlemen?

MR. PEREZ:  We do have one other issue, Your Honor.

MR. MAGLIOLO:  Your Honor --

MR. MONTALVO:  -- before, if I can just bring this up, Your Honor?

THE COURT:  Yes.

MR. MONTALVO:  Regarding 07-275, Mr. Bolanos-Garza case.

THE COURT:  Right.

MR. MONTALVO:  Can I just ask the Court that the scheduling order for that case just follow the scheduling order, or if the Court -- I could file a motion if the Court would like.

THE COURT:  I think a formal motion would be better.  And what you're simply asking, if I understand it, is that the scheduling order that is put in place in this case -- this case being 10-459 -- be incorporated, or at least also filed in the 07-275 case.

MR. MONTALVO:  Thank you, Your Honor.

THE COURT:  I don't see a problem with that, unless Mr. Perez sees a problem with it.

MR. PEREZ:  We don't have a problem.

THE COURT:  It's just a tracking situation. Since he's going to be here on some of those days, you can certainly be here as well.

Yes, sir, Mr. Magliolo?

MR. MAGLIOLO:  There's another issue, Your Honor, relating to Mr. Montolvo's earlier representing some material witnesses in this -- the initial stage of this case.

THE COURT:  "This case" being the 10-459 currently talking about now in this court?

MR. MAGLIOLO:  Yes, Your Honor.

THE COURT:  And that would not, as I understand, or are you asking him would that impact him representing Mr. Gomez -- I mean Mr. Garza in the immigration case?

MR. MAGLIOLO:  Yes, the immigration and his prior, up to this point, reputation of him in the case that would eventually go to trial.

MR. PEREZ:  The 10-459.

MR. MOSBACKER:  Your Honor, I think they're speaking of the current case, not the reentry.  I don't think it impacts at all.

THE COURT:  He's out of this case.  He's going to be out of this case effective October 4th, I believe, is

the date that the Department of Justice came down with its ruling.

So on a going forward basis, he would only be representing Mr. Garza in the illegal reentry case?  Are you questioning whether or not there's some cross-pollination with him continuing in that case?

MR. MAGLIOLO:  It's my understanding that I think Mr. Garza has been made aware of this, and just because we expect this case to be scrutinized as much as any case could possibly be, I guess we just want it clear in the record so when the people that scrutinize this case do, then it will be clear exactly as to Mr. Garza's position.

THE COURT:  Then we might need to make that clear by running a separate scheduling order, period.  That separates you out of this case.

MR. MONTALVO:  Your Honor, I think -- if I may? I think the government wants first -- first of all, the other parties are aware of discovery, and I think we wanted to make the Court aware of it.  Apparently --

THE COURT:  No.  I have the docket sheet.

MR. MONTALVO -- four or five years ago, I was appointed to represent some material witnesses.

THE COURT:  I understand.  I think they are concerned, though, is that some of those material

witnesses -- is it your concern that some of those witnesses may be witnesses in this case?

MR. PEREZ:  In 10-459, yes, Your Honor.

MR. MOSBACKER:  Your Honor --

MR. MONTALVO:  And I have discussed that with Mr. Bolanos, and I have fully made, with Mr. Mosbacker present, we have fully made him aware of this, and he's in agreement.  He has stated to both of us that he does not feel that there is a conflict where he doesn't -- and if there is, he is willing to waive the conflict.

THE COURT:  Well, if there is or was a conflict, as it relates to this case, then certainly that severance is going to cure some of that, potentially.

The question is whether or not there's a conflict now with you representing him in the illegal reentry case, which probably is an unrelated matter to those on that you represented -- when I say unrelated -- I suspect that when you represented some of the other aliens early on, that they were not in relationship to his illegal reentry case.

MR. MONTALVO:  That's correct, Your Honor.  And none of those witnesses would be called to testify against Mr. Bolanos in his illegal reentry case, or at least I don't think.

THE COURT:  All right.  Here's the other

concern, then, that the government might have, and that I would certainly want to make sure of, and that is that, assuming that to be true, what is your duty now, as it relates to involvement with Mr. Mosbacker?  Is your duty now to make sure that you never, in this lifetime, talking about this case again.

See, because if he goes to trial -- let's assume that he goes to trial -- and you're sitting in the back room, it's your client but it ain't your client, in the courtroom, in a true sense of the word because he's going to trial on a different case.  While you certainly could sit there and watch and see what is going on, the question is, what is your relationship going to be with your client that will not -- so that it does not interfere with, or seem as though it's supportive of some theory or fact that Mr. Mosbacker would not, and should not be involved with you about?  If you understand what I mean?  Are you following me?

MR. MONTALVO:  I think so, Your Honor.

THE COURT:  As soon as he gets through talking to his client at the end of the day, you go over and you talk to them, or you sit there and talk to them at the same time, and you're listening to what they're talking about in their case, which is not a problem, as far as you and your client are concerned.  It might be a problem, as far as the

government is concerned -- not that I know of anything or that you know of anything -- but the question is what kind of conversations can you with your client, or can Mr. Mosbacher have with his client in front of you?

MR. MONTALVO:  Your Honor, whatever information I have obtained from my client, Mr. Bolanos, and Mr. Mosbacher has obtained from his client, Mr. Bolanos, I don't believe any of that information would conflict any -- either part of this representation.

I think the issue that the government -- that the government may have had, or I don't have an issue, is that the material witness may have said something perhaps against Mr. Bolanos.  I don't know that to be true.

THE COURT:  Let's assume that they did.  Let's assume that you represented some people that the government now know to be material witnesses, and they have implicated your client in this case -- let's say that's true -- you represented them perhaps in a different case, or a different fashion, or they were here for whatever reason, you were working through the immigration issue.  But they are not in this case, but in their conversations they discuss with the government people that they knew, and your client's name came up.  Now, I don't know that that's an automatic problem, but I would be concerned about your client, once he sees who these people are, coming to you

about that.

MR. MOSBACKER:  Your Honor, I think we can resolve it.  If Mr. Montolvo remains on the reentry case and I remain on this case, we can have an agreement that we will not communicate concerning this case.

THE COURT:  What kind of agreement do we need from them to put up this wall that you believe is necessary?  And I gather from time to time, if the case, during the course of the trial, develops some facts, you certainly have to then bring it to our attention that there's a conflict or problem arising for real, as opposed to thinking it might arise?

MR. PEREZ:  May I ask a question, Your Honor?

THE COURT:  Sure.

MR. PEREZ:  Let's suppose Mr. Bolanos-Garza pleads guilty.

THE COURT:  Okay.

MR. PEREZ:  And let's suppose that Mr. Montalvo no longer, effective October 4th, he no longer represents Mr. Bolanos-Garza --

THE COURT:  Okay.

MR. PEREZ:  -- would that help the Court or help with --

THE COURT:  Well, I don't know that it bothers me one way or the other.

Here's -- I think that once I say and enter an order putting him out of this much case, that separates him from further representation in this case.  My only concern, primarily, is the relationship that he might have with Mr. Mosbacker and his client in a case that he's not representing him on anymore, that's creating a problem for himself and/or his client later on when the witnesses starts showing up.

Now, the witnesses start showing up and they're not showing up in the illegal reentry case, but they show up and they are people that you had impact, influence with, and you're sitting in the back of the courtroom and they're looking at you and they say, "That guy sure looks familiar to me.  I think he used to represent me.  Can I ask him a couple of questions?"  I'm not suggesting that's going to happen.

The question is, when he starts testifying against your former client, is that a problem?  I don't think it is, from the point of view that he's not to then go to Mr. -- that's why I said as between Mosbacker and Montolvo, there has to be a wall, at least, when that occurs.  Number one.  And then number two, it really has to be a situation where he cannot have a conversation with his client while he's representing him in the -- in the -- in the immigration case about something that's going on in

this conspiracy case, because that's not attorney-client relationship anymore in this case.

Attorney-client relationship is specific. It's relating to the old case, the '07 case.  And neither attorney should meet, in other words, after he's out of the case.

MR. MAGLIOLO:  So I can understand, it's my understanding both counsel are aware of Mr. Montalvo, Mr. Mosbacher, both aware of this situation, and they have counseled with their client?

THE COURT:  Their client.

MR. MAGLIOLO:  When he was their client on both cases about this?  If we could get their client to be put on the record that he understands what we're talking about, and if there is any kind of conflict, he waives it, would be the first thing I would ask for.

THE COURT:  I'm not sure we understand it, but we can sure ask him.

MR. MAGLIOLO:  So that would at least be in the record --

THE COURT:  Absolutely.

MR. MAGLIOLO:  -- for the reviewers that are going to look at this in the future.

MR. MONTALVO:  I agree, Your Honor.

MR. MAGLIOLO:  And, secondly, Your Honor, we

would ask Mr. Duran's counsel to, if they could put something in the record where at least at this time, if they see any issues or problems with this situation relating to Mr. Duran so if there is something they see or if there's something comes up in the future, we'd like to know so we can address those issues.

THE COURT:  You agree with that, Mr. Odom, that if you see something on the horizon, that you have a duty, obviously, to step up and bring it the Court's attention?

MR. ODOM:  That's just what we were discussing, trying to figure out which witness he did represent.  And we did know previously.  We're just trying to rack our brains trying to figure it out.  At this point we know of no conflict, but we would like -- we will go and review our files and notes and if we do see any, we will let the Court know.

THE COURT:  Well, and the point is, I don't know to what extent you-all have pollinated, cross-pollinated on the facts and strategies -- let's call it -- in advance of now, but all of that may be common among certain of you, because I believe the -- your two clients were the ones who were being considered.

MR. ODOM:  Right.

MR. MOSBACKER:  Correct.

THE COURT:  And to the extent that there's a

cross-pollination, and you have this former client come up, it can certainly still come up, at least theoretically, before your client, Mr. Odom.  So I think that's what I'm asking.

MR. ODOM:  Right.  And there has been very little coordination between us and Mr. Mosbacher and Mr. Montolvo at this point.  So I don't think that's a problem.

THE COURT:  Okay.

MR. ODOM:  But we do -- we are going to go back to the office and get our notes and check out whether we think there's a problem.

THE COURT:  Sure.

MR. MAGLIOLO:  Another thing, I think the Court has said Mr. Montalvo is officially off the conspiracy case and now representing on his initial case.

THE COURT:  Yes.  He's his pro bono.

MR. MONTALVO:  Your Honor, we did discuss the case as well.

THE COURT:  We needed -- I want -- he's here today on this '07 case, because I needed to bring that in in a way to figure out if they were going to be tried together, or, you know, in other words, it's an hour of testimony one way or the other or whether or not he was going to be.  And I think if that were the case, there

might certainly be some concern.

MR. MAGLIOLO:  Then the only thing left, I think, is for their client to tell the Court it's his personal position on this matter.

THE COURT:  Sure.

MR. MONTALVO:  May we bring him up?

THE COURT:  Sure.  Mr. Duran -- I'm sorry. Mr. Bolanos.  I apologize.  Good morning, sir.

DEFENDANT BOLANOS-GARZA:  Good morning.

THE COURT:  What is your name?

DEFENDANT BOLANOS-GARZA:  Jose Alberto Bolanos-Garza.

THE COURT:  Mr. Bolanos, you probably have tried to follow our discussion here this morning as we were talking about this issue of a conflict of interest that could or may arise, may not, in the context of the trial of this case.  This case being the 10-459, conspiracy to transport.  And you probably heard us discuss how one of your attorneys, Mr. Montalvo, had represented -- what do we want on call them -- what's the proper name?

MR. MONTALVO:  Material witnesses.

THE COURT:  Material witnesses that are not indicted in this case, and perhaps are not indicted in any case, but who may have given information to the government during the course of an investigation.  He might have very

well represented some of those people, and those folk may have had something to say that would implicate one or more persons in this case. We don't know. At least I don't know at this point.

So here's the concern. The concern is whether or not you have a problem at this time with Mr. Montalvo going forward, having represented you in the past, as now having a conflict, now that this matter has been brought to your attention, conflict of interest. Is there any problem that you see with the past representation of Mr. Montalvo, representation of yourself by him, and the fact that you are going forward now without him and only Mr. Mosbacker? And I said that in a convoluted way, but I'm trying to find out if you see any problem with his past representation?

DEFENDANT BOLANOS-GARZA: No.

THE COURT: He is continuing to represent you, and the question is should he continue to represent you in your 2007-275 case where you are charged by indictment with the offense of illegal reentry. You know he is representing you in that case?

DEFENDANT BOLANOS-GARZA: Yes.

THE COURT: Do you see or believe that there is any conflict of interest in his continuing to represent you in that case?

MR. MONTALVO:  I don't think so.

THE COURT:  If it came to your attention, or if you believed that it did, would you bring that to my attention, as well as to his attention, at the earliest possible time?

DEFENDANT BOLANOS-GARZA:  Yes.

THE COURT:  And it can arise in a situation where, for example, some witness shows up on the witness stand during the course of the trial in this case that will be testifying about facts that might impact you.  And at the time, that is, several months or several years ago, Mr. Montalvo stood and represented them in some other way. That's how it could come up.  Do you understand that?

DEFENDANT BOLANOS-GARZA:  Yes, I understand.

THE COURT:  All right.  With that understanding, then, I want to make sure that you understand you have an obligation to say something to your attorney in this case, or say something to Mr. Montolvo in your '07 case and bring it to the Court's attention if that issue comes up and you're concerned about him having represented someone else in the past that might have some say so in this case.  Do you understand that?

DEFENDANT BOLANOS-GARZA:  Yes, I understand.

THE COURT:  So at this point in time, you have no concern about any conflict, and if so, you waive that

conflict; is that right?

DEFENDANT BOLANOS-GARZA:  I don't think there's a problem.

THE COURT:  But I don't want to know whether or not if there is any conflict that you even see or that somebody else might see, you're waiving it at this time, but you can bring it up to me later if you think it becomes a problem.

DEFENDANT BOLANOS-GARZA:  Yes, I will tell you.

THE COURT:  All right.  Very good.  Anything else, gentlemen?

MR. MONTALVO:  No, Your Honor.

MR. MOSBACKER:  No, Your Honor.

MR. MAGLIOLO:  No, Your Honor.

THE COURT:  All right.  Thank you.  Will there be any concern that the record -- Mr. Montalvo had asked that the scheduling order in the two cases run together simultaneously, or the same order it directs both cases. Is that going to be a problem?

MR. MAGLIOLO:  Not with the United States, Your Honor.  I think, you know, if they're together or a few days apart, I don't see how that would be make any difference.  So not from the United States.

THE COURT:  Well, they're not going to be tried, assuming that they go to trial, the same day anyway.

But the point is that they would just be simply show up days if there are -- if there's a basis for a show up.

MR. MONTALVO:  Your Honor, I was just thinking of the expense the Marshal is going to have to bring them on another day, or having other court setting.  I think this case will probably resolve, be resolved somehow in the future together.  I don't know that for a fact.  But I just think if the Court would run them, we would save resources.

THE COURT:  Yes.  I don't have a problem whether they're both assigned to me.  I just want to make sure that when people look at records, they don't see what people who are handling those records and making those records see during the course of their proceeding.  I just want to make sure that six months, 10 months from now, somebody looks back and says, "These guys were all working together," and certainly we are.  That's our job.  But not to any ill to the defendant, though.  We're just trying to make sure the record is clear.

MR. PEREZ:  We certainly have no problem with that, Your Honor.

THE COURT:  Okay.  Good.

MR. MONTALVO:  Alternatively, the government could to dismiss the case today.

THE COURT:  I'm sure you-all will get deeply into that conversation as soon as we're done here.

Anything else, gentlemen.

MR. PEREZ:  No, Your Honor.

MR. MOSBACKER:  No, Your Honor.

THE COURT:  All right.  Thank you very much, and you're excused.  Except I need to speak to Mr. Montalvo, Mr. Mosbacker, I believe the two of you, on the administrative side of matters, so that we have a clear, going forward understanding.

All right.  I've said a couple of things, but I need to ask you some things about some records as well.

Thank you, gentlemen and lady.  You may be excused.

MR. PEREZ:  Thank you, Your Honor.

THE COURT:  By the way, I didn't hear anything from some of you, so have I disrespected you in any way?

MR. GLENN:  No, sir.

MR. FRIESELL:  No, Your Honor.

THE COURT:  If the two of you would approach the bench and come around here we can stay on the record without having to leave out, and that will help me to speak to these issues.

**(The following was held at sidebar)** ▮







**(The following was held in open court)**

MR. PEREZ:  May I have a moment, Your Honor? Separate and apart?  Talk to Mr. Mosbacker just two seconds?

THE COURT:  I'm done.

MR. PEREZ:  But we --

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*

THE COURT:  You want me to stay and watch?

MR. PEREZ:  Yes, sir.

THE COURT:  I'm just kidding.

MR. PEREZ:  Approach the bench, Your Honor?

**(The following was held at sidebar)**

MR. MOSBACKER:



*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*



*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*





43



11:05:09

11:05:29

11:05:42

11:05:47

11:05:52

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*



11:06:01

**(Recessed at 11:06 a.m.)**

**COURT REPORTER'S CERTIFICATE**

I, Johnny C. Sanchez, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/_____
Johnny C. Sanchez, CRR, RMR